# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RASHAWN HARRIS, | : | |
| | : | Civil Action No. 13-5735 (RMB) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WARDEN J.T. SHARTLE, | : | |
| | : | |
| Respondent. | : | |

Petitioner Rashawn Harris ("Petitioner"), a prisoner currently confined at the F.C.I. Fairton, has submitted a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241.[1] Petitioner is challenging the results of his prison disciplinary proceeding. See Docket Entry No. 1. Because it appears from a review of the Petition that Petitioner is not entitled to relief, the Petition will be dismissed. See 28 U.S.C. § 2243. However, out of abundance of caution, the Court will grant Petitioner a narrowly-tailored leave to amend his pleading to ensure Petitioner's opportunity to state the relevant facts in the event such fact are present but were omitted from the Petition as a result of Petitioner's oversight.

---

[1] Section 2241 provides, in relevant part, that

> [t]he writ of habeas corpus shall not extend to a prisoner unless — . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States . . . .

I.  BACKGROUND

Petitioner asserted that, on March 3, 2013, during the lunch period, Petitioner's prison officials conducted a routine search of the cell where Petitioner was housed with seven other inmates. See id. at 12. The officer who conducted the search produced a report indicating that a "homemade" knife was discovered in the cell, being "hidden behind a locked and bolted hatch in the ceiling."[2] Id. A prison investigation ensued on the basis on that report; neither Petitioner nor any of his cellmates admitted to the ownership of the knife. See id. During the investigation process, Petitioner asserted that, since the cell was also searched on May 2, 2013, and no knife was discovered during that search, a videotape of the activities in front of the cell entrance had to show the particular inmate who brought the knife in after the May 2, 2013 search and prior to the May 3, 2013 search. See id. at 12. Thus, he requested production of the videotape and any "exculpatory evidence" his prison officials might detect if they were to seek such evidence. Id. He was informed that no such evidence existed. See id.

After a disciplinary hearing, all inmates in the cell, Petitioner included, were deemed to have committed a disciplinary

---

[2] The knife was a "long metal object that was sharpened to a point that appeared to be a homemade weapon. It had tape around one end for a handle and a piece of string for a lanyard." Docket Entry No. 1, at 13.

infraction in violation of the Code 108, titled "Possession of a Hazardous Tool." See id. at 12-13.[3] Each of the inmates in the cell, Petitioner included, was sanctioned. Petitioner's sanction was loss of 35 days of good-time-conduct credits. See id. at 13 and 16-17.

Petitioner asserts that his disciplinary proceeding was deficient because: (1) he was not provided with the videotape and any "exculpatory evidence" that his prison officials might have discovered had they searched for such evidence; and (2) the administrative hearing was conducted upon a hearing referral made by a single prison officer. Petitioner also maintains that the sanction imposed upon him: (1) violated his due process rights because each of the eight inmates in the cell was sanctioned; (2) violated Petitioner's equal protection rights in light of a certain vacatur of a certain set of sanctions imposed upon a certain different group of inmates in connection with a certain, wholly different, disciplinary infringement; and (3) violated his due process rights because Petitioner deems the language of Code 108 too vague and insufficient to put Petitioner on notice that the term "Hazardous Tool" implied a knife or an analogous object. See generally, id. at 13-17. He seeks restoration of the lost

---

[3] According to the Petition, the infringement was referred to a disciplinary officer by a one officer rather than two, and Petitioner deemed that referral biased. See Docket Entry No. 14.

3

good time credits and expungement of his prison record. See id. at 9.

II. STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides, in relevant part, that

> [a] court . . . entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

Thus, while a pro se habeas submissions are construed liberally and with a measure of tolerance, see Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Att'y Gen., 878 F.2d 714, 721-22 (3d Cir. 1989), a court is obligated to dismiss a habeas petition without directing a responsive pleading if it appears from the face of the petition that the petitioner is not entitled to relief. See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989).

III. DISCUSSION

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972). Such protections are, however, "subject to restrictions imposed

by the nature of the regime to which [prisoners] have been lawfully committed." Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir. 1999). Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to such credits as a sanction, the prisoner is entitled to a hearing by an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, i.e., by an officer excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement . . . in the circumstances underlying the charge." Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

Id addition, within the setting of an administrative hearing, the due process guarantees have two arms, one "quasi-procedural" and the other "quasi-substantive." Mitts v. Zickefoose, 869 F. Supp. 2d 568, 575 (D.N.J. 2012). To comply with the quasi-procedural arm, prison officials must provide a prisoner facing sanctions with: (1) a written notice of the charges at least 24 hours prior to his hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense unless it is unduly hazardous to institutional

5

safety/correctional goals, and (3) a written statement as to the evidence relied on and the reasons for the disciplinary action. See Wolff, 418 U.S. at 564-66.[4]

On its quasi-substantive side, the due process requires that findings of a prison disciplinary official be supported by "some evidence" in the record. See Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985). Ascertaining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. 455. "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56 (emphasis supplied).[5]

---

[4] Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. See Wolff, 418 U.S. at 569-70.

[5] Hence neither the "beyond a reasonable doubt" nor even the "preponderance of evidence" standard is applicable to a prison hearing. See, e.g., Hairston v. Heffron, 2010 U.S. Dist. LEXIS 134999, at *13 (D.N.J. Dec. 21, 2010) ("there is no question that the 'some evidence' standard is less exacting than the preponderance of the evidence standard: it merely requires that the decision not be arbitrary or not without any support in the record") (citing Gaither v. Anderson, 236 F.3d 817, 819 (7th Cir. 2000); Brown v. Fauver, 819 F.2d 395 (3d Cir. 1987); Gibbs v. King, 779 F.2d 1040, 1044 (5th Cir. 1986)); McCauley v. Williamson, 2006 U.S. Dist. LEXIS 77182 (M.D. Pa. Aug. 18, 2006) (dismissing a petitioner's claim that his hearing should have been conducted under the beyond a reasonable doubt standard).

6

Hence, in the event the prison officer who conducted the May 3, 2013 search actually discovered a homemade knife or any other object of an analogous nature, the disciplinary findings against Petitioner were necessarily supported by "some evidence" and, hence, the quasi-substantive arm of the due process requirements was satisfied.

The quasi-procedural requirements were, seemingly, also satisfied, since the Petition did not assert that Petitioner was deprived of a notice as to the charges against him, or that he was denied a written statement as to the disciplinary findings and underlying evidence.

Petitioner's position that he requested but was denied production of the videotape of the activities at his cell entrance and "all exculpatory evidence" that his prison officials might have located had they searched for such evidence is unavailing. Since the disclosure rights afforded, under Brady v. Maryland, 373 U.S. 83 (1963), to criminal defendants during their criminal trial proceedings are inapplicable to an inmate facing a disciplinary prison hearing, see Mitts, 869 F. Supp. 2d at 517, Petitioner's prison officials had no obligation to search for the "exculpatory evidence" which Petitioner hypothesizes might have been found upon such a search.[6]

---

[6] A fortiori, the prison officials could not produce such evidence if it were none.

By the same token, the prison officials' denial of Petitioner's request for production of the videotape was well-warranted since Petitioner merely speculated that there might be a footage of someone entering the cell while hiding the knife.[7]

Furthermore, Petitioner's position that he was denied an impartial tribunal because the disciplinary hearing was conducted by an officer upon a referral made by one other officer rather than two-officer referral is without merit. The due process guarantees, as detailed in Wolff, 418 U.S. at 570-71, and Meyers, 492 F.2d at 306, do not mandate a particular number of officers even for the purposes of conducting a hearing; they merely require that the officer who conducted the search and produced the underlying report be an officer other than the one holding the hearing and rendering the discipline. A fortiori, the number

---

[7] The logic of Petitioner's speculation is not entirely clear to this Court since the inmate hiding a knife, be it Petitioner or any of his cell-mates, would have no reason or incentive to publically display that knife and be videotaped with that knife while smuggling this piece of contraband into the cell. Moreover, the fact that no knife was located during the May 2, 2013 search is by no means dispositive or support Petitioner's interest in the videotape since: (a) the May 2, 2013 search might have been conducted less thoroughly; and/or (b) on May 2, 2013, the knife could have been located within the cell but at a place other than "behind a locked and bolted hatch in the ceiling," and then moved to that "behind a locked and bolted hatch" location after the May 2, 2013 search but prior to May 3, 2013 search, all without leaving the cell and without a possibility of being caught on the video footage.

of officers referring an incident for a hearing is wholly irrelevant.

Here, Petitioner conceded that the search was conducted and the incident report was produced by Officer Vardleman, while the hearing was conducted and sanctions rendered by a different disciplinary officer: upon the intermediary referral by Officer Ebinger. See Docket Entry No. 1, at 11-12. Thus, Petitioner due process rights neither were nor could have been implicated by that referral.

In addition, Petitioner's attack on the language of Code 108 is unavailing.

> [Where the petitioner] argued that his due process rights were violated because [Code] 108 is void for vagueness[,] . . . the District Court properly determined that this argument is meritless. A regulation is void for vagueness if it (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000). We are not persuaded that [Code] 108 is unconstitutionally vague. It is clear what the regulation as a whole prohibits, which limits the possibility of arbitrary and discriminatory application. See Grayned v. City of Rockford, 408 U.S. 104, 108-10 (1972). One can readily infer from the language of [Code] 108 that a [knife or a homemade object of the same use] would be among those tools "likely to be used in an escape or escape attempt," or otherwise "hazardous to institutional security." Accordingly, [the petitioner's] void for vagueness claim fails.

Hall v. Zickefoose, 448 F. App'x 184, 166 (3d Cir. 2011).

Moreover, Petitioner's equal protection challenge to his disciplinary sanction also fails.

> [Where the petitioner] argued that he has been treated differently from other inmates in similar situations in violation of the Equal Protection Clause [since] three other inmates originally charged with violating [Code] 108 had their charges downgraded to violating [Code] 305[,] . . . the District Court properly rejected this claim. The Equal Protection Clause requires that all people similarly situated be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "To bring a successful claim . . . for a denial of equal protection, [a] plaintiff[] must prove the existence of purposeful discrimination." Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009). This requires [the petitioner] to demonstrate that he received different treatment from that received by other individuals similarly situated. See id. at 196-97. Although [the petitioner] claimed that there were three inmates that received a lesser sanction for the same disciplinary infraction, he failed to show that the three inmates were otherwise similarly situated. . . . [He,] therefore fails to show that his sanction was motivated with a discriminatory purpose. Accordingly, his equal protection claim fails.

Id. at 186-87 (footnote omitted).

Thus, the fact that some other group of inmates (who committed a different violation) was differently sanctioned cannot lend support to Petitioner's equal protection challenge since those inmates were, by definition, not similarly situated. Moreover, the fact that *all* inmates in Petitioner's cell were sanctioned verifies, in and by itself, that Petitioner's equal protection rights were not implicated. Finally, the fact that Petitioner was one of the eight inmates in the cell could not render Petitioner immune from being found in constructive

10

possession of the knife and, thus, cannot provide a viable basis to Petitioner's position that he should have escaped sanctions.

> In evaluating prisoners' due process rights, the court must be sensitive to the intricate balancing of prison management concerns with prisoners' liberty. . . . Courts that have considered this question have uniformly held that the discovery of contraband in a shared cell constitutes "some evidence" of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell, including depriving that inmate of his or her liberty interest in good time credits. . . . We are not oblivious to the realities of prison life that might make it difficult or even dangerous for prisoners in shared cells to be affirmatively responsible for policing the illicit activities of their cellmates. Nonetheless, the Due Process Clause requires us to balance a prisoner's liberty interest in [good time credits] against the prison's interest in maintaining a safe and secure environment. Assaults by inmates on both staff and other inmates are a major problem facing the federal prison system. . . . [Here], it is undisputed that two homemade shanks were found in a space accessible from within [the petitioner's] cell. This evidence, by itself, constitutes "some evidence" that [the petitioner constructively] possessed the weapons in question. . . . It follows that the DHO did not violate [the petitioner's] due process rights when it found that he had committed the prohibited act of "Possession of a Weapon," in violation of BOP Code 104, and sanctioned him with the forfeiture of forty days good time credit.

Denny v. Schultz, 708 F.3d 140, 144-47 (3d Cir. 2013).

In light of the foregoing, Petitioner's application for a writ voiding his loss of good time credits is meritless unless Petitioner states facts showing that *no* knife (or an analogous object that could have been qualified as a homemade knife) was detected in his cell as a result of the May 3, 2013 search, and

the entire report about that knife was wholly manufactured by Officer Vardleman and "rubber-stamped" by Petitioner's disciplinary hearing officer.

In the same vein, Petitioner's application for expungement is without merit unless Petitioner makes the very same showing. First, it shall be noted that the Court of Appeals stressed its doubts as to whether an expungement claim could, altogether, be raised in a habeas action. See Williams v. Fed. Bureau of Prisons, 85 F. App'x 299 (3rd Cir. 2004). In Williams, the inmate filed a § 2241 petition claiming that the BOP improperly refused to delete information in his prison file. See id. at 303. In response, the Court of Appeals observed:

> We have never had to decide whether to endorse the right of expungement announced in Paine v. Baker, 595 F.2d 197 (4th Cir. 1979), and other Circuit Courts of Appeals have expressly questioned its precedential value. [See, e.g.,] Johnson v. Rodriquez, 110 F.3d 299, 308-09 n. 13 (5th Cir. 1997). Nevertheless, [the petitioner] argues that his . . . prison file expungement claim are meritorious under Paine v. Baker. [In Paine,] the Fourth Circuit announced that, in limited circumstances, . . . prisoners have a . . . due process right to have "prejudicial erroneous information expunged from their prison files." [Paine,] 595 F.2d at 202. The [Fourth Circuit] held:
>
>> In certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is [wholly] false, and (3) that it is relied upon to a constitutionally significant degree.
>
> Id. at 201. . . .

> Even if we assume arguendo that [an inmate] can assert a Paine v. Baker expungement claim in a § 2241 habeas petition, it is nevertheless clear that he is not entitled to relief [of expungement of] his prison file [if the information] on file is factually correct.

Id. at 303.

In light of the "arguendo" language used by the Court of Appeals in Williams and the clarifications later provided by the Supreme Court in Wilkinson v. Dotson, 544 U.S. 74 (2005), Petitioner's expungement claim appears not cognizable in habeas review. And, in any event, it is facially meritless unless he states facts showing that no whatsoever knife was found in Petitioner's cell. See Paine, 595 F.2d at 103.

Correspondingly, all Petitioner's challenges will be dismissed. However, being mindful of Petitioner's statement that he and his cell-mates were disciplines on the basis of "an *alleged* knife that was discovered," Docket Entry No. 1, at 12 (emphasis supplied), the Court construes this statement as potentially suggesting Petitioner's position that no knife or an analogous object was found as a result of May 3, 2013 search. Hence, mainly out of abundance of caution, the Court will allow Petitioner an opportunity to file an amended pleading setting forth his facts, if any, showing that no hazardous object resembling a knife was produced as a result of the May 3, 2013 search of Petitioner's cell and, hence the report underlying

13

Petitioner's sanctions and the record entry made in Petitioner's prison file were wholly and entirely false.

IV. CONCLUSION

For the foregoing reasons, the Petition, Docket Entry No. 1, will be dismissed. Such dismissal will be with a narrowly-tailored leave to amend, and Petitioner will be allowed an opportunity to assert his facts, if any, showing that no homemade knife or an analogous object of any kind was produced as a result of the May 3, 2013 search of Petitioner's cell.[8]

An appropriate Order follows.

        s/Renée Marie Bumb
        **RENÉE MARIE BUMB**
        **United States District Judge**

Dated: October 18, 2013

---

[8] The Court, correspondingly, will direct an administrative termination of this matter while retaining temporary jurisdiction over this action so to entertain Petitioner's amended pleading, if such is filed. See Papotto v. Hartford Life & Accident Ins. Co., 2013 U.S. App. LEXIS 19660, at *26-27 (3d Cir. Sept. 26, 2013).